RECORD NO. 16-2412(L)
CROSS-APPEAL NO. 16-2456

IN THE

# United States Court of Appeals
### FOR THE FOURTH CIRCUIT

### RECORD NO. 16-2412(L)

LARRY PAIR,

*Plaintiff - Appellee,*

v.

PAUL BURROUGHS; NICK WILDER; JAMES TIMOTHY MANN,

*Defendants - Appellants.*

and

JOHN DOE 1; JOHN DOE 2 JOHN DOE 3; JOHN DOE 4;
JOHN DOE 5; JOHN DOE 6; JOHN DOE 7; CHRIS BRYANT;
MARK GUNN, BOBBY CARMICHAEL; PHILLIP MAYES**,**

*Defendants.*

### RECORD NO. 16-2456

LARRY PAIR,

*Plaintiff - Appellant,*

PAUL BURROUGHS; NICK WILDER; JAMES TIMOTHY MANN;
CHRIS BRYANT; BOBBY CARMICHAEL; PHILLIP MAYES,

*Defendants - Appellees.*

and

MARK GUNN; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3;
JOHN DOE 4; JOHN DOE 5; JOHN DOE 6; JOHN DOE 7,

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT RICHMOND

**OPENING BRIEF OF DEFENDANTS-APPELLANTS
CROSS DEFENDANTS-APPELLEES**

## COUNSEL LISTED ON BACK OF COVER

LANTAGNE LEGAL PRINTING 801 East Main Street Suite 100 Richmond, Virginia 23219 (804) 644-0477
A Division of Lantagne Duplicating Services

**RECORD NO. 16-2412(L)**
**CROSS APPEAL NO. 16-2456**

―――――――――――――――

Jim H. Guynn, Jr.
GUYNN & WADDELL, P.C.
415 South College Avenue
Salem, Virginia 24153
(540) 387-2320 Phone
(540) 389-2350 Facsimile
jimg@guynnwaddell.com

*Counsel for Defendants-Appellants/*
*Cross-Defendants-Appellees*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __16-2412__      Caption: _Larry Pair v. Paul Burroughs_

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Paul Burroughs_
(name of party/amicus)

_____

who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.      Does party/amicus have any parent corporations?                ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                    ☐YES ☑NO
        If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))? ☐ YES ☑ NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐ YES ☑ NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?   ☐ YES ☑ NO
     If yes, identify any trustee and the members of any creditors' committee:

Signature: _____          Date: _____12/28/2016_____

Counsel for: Appellant Paul Burroughs

## CERTIFICATE OF SERVICE
**************************

I certify that on ____12/28/2016____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Bradley P. Marrs, Esq.
Patrick C. Henry, II, Esq.
Marrs & Henry
7202 Glen Forest Drive, Suite 307
Richmond, VA 23226

_____                    _____12/28/2016_____
     (signature)                                    (date)

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __16-2412__        Caption: __Larry Pair v. Paul Burroughs__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Nick Wilder__
(name of party/amicus)

_____

who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO


2.    Does party/amicus have any parent corporations?           ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                               ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))? ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?   ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _____     Date: ____12/28/2016____

Counsel for: Appellant Nick Wilder

## CERTIFICATE OF SERVICE
***************************

I certify that on ____12/28/2016____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Bradley P. Marrs, Esq.
Patrick C. Henry, II, Esq.
Marrs & Henry
7202 Glen Forest Drive, Suite 307
Richmond, VA 23226

_____          ____12/28/2016____
        (signature)                          (date)

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __16-2412__     Caption: __Larry Pair v. Paul Burroughs__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__James Timothy Mann__
(name of party/amicus)

_____

who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                         ☐YES ☑NO
      If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))? ☐ YES ☑ NO If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)     ☐ YES ☑ NO If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?        ☐ YES ☑ NO If yes, identify any trustee and the members of any creditors' committee:

Signature: _____      Date: ____12/28/2016____

Counsel for: Appellant James Timothy Mann

## CERTIFICATE OF SERVICE
****************************

I certify that on ____12/28/2016____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Bradley P. Marrs, Esq.
Patrick C. Henry, II, Esq.
Marrs & Henry
7202 Glen Forest Drive, Suite 307
Richmond, VA 23226

_____      ____12/28/2016____
(signature)                   (date)

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __16-2456__    Caption: __Larry Pair v. Paul Burroughs__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Chris Bryant__
(name of party/amicus)

_____

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
       If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
       If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))? ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)   ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?   ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: _____     Date: _____1/20/2017_____

Counsel for: Chris Bryant

## CERTIFICATE OF SERVICE
****************************

I certify that on _____1/20/2017_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Bradley P. Marrs, Esq.
Patrick C. Henry, II, Esq.
Marrs & Henry
7202 Glen Forest Drive, Suite 307
Richmond, VA 23226

_____          _____1/20/2017_____
         (signature)                                    (date)

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __16-2456__          Caption:  Larry Pair v. Paul Burroughs

Pursuant to FRAP 26.1 and Local Rule 26.1,

Bobby Carmichael
(name of party/amicus)


who is _____ appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                              ☐ YES ☑ NO
      If yes, identify all parent corporations, including all generations of parent corporations:



3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                                  ☐ YES ☑ NO
      If yes, identify all such owners:



09/29/2016 SCC                              - 1 -

4.     Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))? ☐ YES ☑ NO If yes, identify entity and nature of interest:

5.     Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO If yes, identify any trustee and the members of any creditors' committee:

Signature: _____    Date: _____1/20/2017_____

Counsel for: **Bobby Carmichael**

## CERTIFICATE OF SERVICE
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I certify that on _____1/20/2017_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Bradley P. Marrs, Esq.
Patrick C. Henry, II, Esq.
Marrs & Henry
7202 Glen Forest Drive, Suite 307
Richmond, VA 23226

_____         _____1/20/2017_____
   (signature)                  (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __16-2456__    Caption: __Larry Pair v. Paul Burroughs__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Phillip Mayes__
(name of party/amicus)

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.  Does party/amicus have any parent corporations?  ☐YES ☑NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐YES ☑NO
    If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))? ☐ YES ☑ NO If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO If yes, identify any trustee and the members of any creditors' committee:

Signature: _____    Date: _____1/20/2017_____

Counsel for: **Phillip Mayes**

## CERTIFICATE OF SERVICE
**************************

I certify that on _____1/20/2017_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Bradley P. Marrs, Esq.
Patrick C. Henry, II, Esq.
Marrs & Henry
7202 Glen Forest Drive, Suite 307
Richmond, VA 23226

_____          _____1/20/2017_____
        (signature)                           (date)

# TABLE OF CONTENTS

CORPORATE DISCLOSURES

TABLE OF AUTHORITIES .................................................................... ii

JURISDICTIONAL STATEMENT ....................................................... 1

STATEMENT OF THE ISSUES PRESENTED .................................. 1

STATEMENT OF THE CASE .............................................................. 1

    I.    Procedural History ................................................................. 1

    II.    Statement of Relevant Facts ................................................. 3

        A. The allegation that Mann threw Pair to the ground ............................. 4

        B. The allegation that Wilder stomped on Pair's hand ............................. 5

        C. The allegation that Burroughs kneed Pair in the back ......................... 5

SUMMARY OF THE ARGUMENT ..................................................... 7

ARGUMENT .......................................................................................... 7

    III.    STANDARD OF REVIEW ..................................................... 7

    IV.    THE DISTRICT COURT ERRED BY DENYING THE OFFICERS QUALIFIED IMMUNITY ................................................ 8

        A. Officer Mann ..................................................................... 12

        B. Lieutenant Burroughs ....................................................... 15

CONCLUSION ....................................................................................... 25

REQUEST FOR ORAL ARGUMENT ................................................ 27

CERTIFICATE OF COMPLIANCE .................................................... 28

CERTIFICATE OF SERVICE ............................................................. 29

i

# TABLE OF AUTHORITIES

## CASES

Page

*Anderson v. Creighton*,
483 U.S. 635 (1987)............................................................8, 10, 11

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)........................................................................16

*Bennett v. Gravelle*,
323 F. Supp. 203 (D. Md.), *aff'd* 451 F.2d 1011 (4th Cir. 1971), *cert. denied*, 407 U.S. 917 (1972)..............................................................9

*Bouchat v. Balt. Ravens Football Club, Inc.*,
346 F.3d 514 (4th Cir. 2003) .........................................................14

*Cook v. City of Bella Villa*,
582 F.3d 840 (8th Cir. 2009) ....................................................17, 24

*Cook v. Howard*,
484 Fed. Appx. 805 (4th Cir. 2012) ...............................................14

*Graham v. Connor*,
490 U.S. 386 (1989)........................................................................10

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982)..........................................................................8

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)........................................................................14

*M & M Medical Supplies & Serv., Inc. v. Pleasant Valley Hospital, Inc.*,
981 F.2d 160 (4th Cir. 1992) ....................................................14, 16

*Malley v. Briggs*,
475 U.S. 335 (1986)..............................................................8, 11, 25

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
 475 U.S. 574 (1986).................................................................................14, 15

*McDonald v. Dunning,*
 760 F. Supp. 1156 (E.D. Va. 1991) ....................................................................9

*Mensh v. Dyer,*
 956 F.2d 36 (4th Cir. 1991) ...............................................................19, 20, 25

*Michigan v. Summers,*
 452 U.S. 692 (1981)............................................................................9, 18, 24

*Mitchell v. Forsyth,*
 472 U.S. 511 (1985)..............................................................................................1

*Mitchell v. Rice,*
 954 F.2d 187 (4th Cir. 1992) ....................................................................8, 15

*Muehler v. Mena,*
 544 U.S. 93 (2005)............................................................................9, 10, 24

*Parrish v.   Cleveland,*
 372 F.3d 294 (4th Cir. 2004) ............................................................................7

*Pearson v. Callahan,*
 555 U.S. 223 (2009)............................................................................................8

*Rowland v. Perry,*
 41 F.3d 167 (4th Cir. 1994) ..........................................................................24

*S.P. v. City of Takoma Park,*
 134 F.3d 260 (4th Cir. 1998) ............................................................................8

*Sevigny v. Dicksey,*
 846 F.2d 953 (4th Cir. 1988) ............................................................................8

*Smith v. Ray,*
 781 F.3d 95 (4th Cir. 2015) ......................................................................22, 23

*Springman v. Williams*,
   122 F.3d 211 (4th Cir. 1997) ...........................................................................11

*Vinnedge v. Gibbs*,
   550 F.2d 926 (4th Cir. 1977) .............................................................................9

*Wright v. Collins*,
   766 F.2d 841 (4th Cir. 1985) ........................................................................9, 12

*Yanez-Marquez v. Lynch*,
   789 F.3d 434 (4th Cir. 2015) ..........................................................17, 18, 19, 25

## STATUTES

28 U.S.C. § 1291 ...............................................................................................1
28 U.S.C. § 1331 ...............................................................................................1
42 U.S.C. § 1983 .......................................................................................1, 2, 9

## STATUTES

Fed. R. Civ. P. 56 .............................................................................................15
Fed. R. Civ. P. 56(c) .........................................................................................11

iv

## JURISDICTIONAL STATEMENT

Because this case arises under 42 U.S.C. § 1983, the District Court had federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  This Court has jurisdiction under 28 U.S.C. § 1291.  On November 28, 2016, and December 9, 2016, the District Court entered orders denying the Defendants' motion for summary judgment on qualified immunity—a "final decision" for purposes of 28 U.S.C. § 1291, *e.g.*, *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). The Defendants timely filed their notice of appeal.

## STATEMENT OF THE ISSUES PRESENTED

1.     Did the district court err by denying Detective James Timothy Mann, Lieutenant Paul Burroughs, and Sergeant Nick Wilder (the "Officers") qualified immunity?

## STATEMENT OF THE CASE

### I.     Procedural History.

This case arises from a search of Larry Pair's home conducted by the Officers on March 21, 2014.  On December 23, 2015, Mr. Pair filed this lawsuit against seven John Doe defendants employed by the Prince George County Sheriff's Office and/or Prince George County Police Department.  On March 1, 2016, the District Court granted Pair's motion for leave to amend his complaint to

1

add the proper parties. Pair filed an amended complaint on March 2, 2016, naming

seven officers as defendants, including the three remaining Officers. Pair alleged,

among other claims, that during the search the defendants used excessive force in

violation of his Fourth Amendment rights under § 1983. On October 20, 2016, the

defendants filed a motion for summary judgment. With respect to the § 1983

claims against them, the defendants argued they were entitled to qualified

immunity. On November 28, 2016, and December 9, 2016, the District Court

issued orders granting summary judgment as to four of the defendant officers and

narrowed the scope of the § 1983 claims. The District Court denied summary

judgment, thereby denying qualified immunity, to these Officers on the following

allegations: (1) that Mann threw Pair to the ground; (2) that Burroughs kneed Pair

in the back; and (3) that Wilder stomped on Pair's hand (the "physical contact

claims"). The District Court reasoned that there were existing material factual

disputes concerning the physical contact claims. JA 99. In particular, the District

Court determined that a jury must determine "how much force was used when [the

Officers] brought Pair to the ground, kneed him in the back, and stomped on his

hand." JA 100. Mann, Burroughs, and Wilder filed this appeal.

2

## II.    Statement of Relevant Facts.

*Events leading up to the allegations of physical contact.*

On March 21, 2014, the Officers executed a search warrant at Pair's residence.  JA 858.  The warrant authorized a search for electronic data.  JA 900, JA 316.  The Officers arrived at Pair's residence in five vehicles.  JA Vol. III-CD. One of the five vehicles was a marked police car, which pulled in after the unmarked vehicles.  JA 724-725.  Detective Mann and Sergeant Wilder, traveling together in a pickup truck, drove the truck onto Pair's lawn and up to his porch where Pair and his stepson were standing.  JA Vol. III-CD; JA 724.  Pair and his stepson were sweeping the porch.  JA 724.  Mann and Wilder quickly exited the vehicle and approached Pair with their weapons drawn and targeted.  JA Vol. III-CD.  Wilder carried a rifle and Mann carried a shield in one hand and a handgun in the JA Vol. III-CD; JA 1076.  Upon exiting the vehicle, Detective Mann yelled "police, police, get on the ground!  Police, police, get on the ground, search warrant!"  JA 887.  Wilder gave similar commands.  JA 1109.  Pair could not understand what they were saying because the officers yelled simultaneously.  JA 725.  Pair "went blank" and did not immediately get on the ground but rather "st[ood] with [his] hands up."  JA 725, JA 747.  Pair was unarmed.  JA 279.

3

*The physical contact allegations.*

In reference to the physical contact claims, Pair testified "they threw me down face-forward, put the knee in my back -- lot of pain -- and stepped on my hand at the same time." JA 726-27. Pair testified he knew of only one officer involved in that physical contact. JA 727. He believed that person was Sergeant Wilder, because "it sounded like his voice." JA 760-61.

**A.      The allegation that Mann threw Pair to the ground.**

In the Amended Complaint, Pair asserted "the Officers charged Mr. Pair . . . and violently grabbed and threw Mr. Pair face down onto the floor of the porch." JA 15. Pair did not identify which officer threw him down. On September 16, 2016, Counsel deposed Mr. Pair. Pair stated explicitly that he did not know who threw him to the floor. JA 726. In Pair's Opposition to Defendants' Motion for Summary Judgment, Pair's attorneys asserted, for the first time, that it was Detective Mann who threw him. JA 52. They argued that Mann was responsible because "[w]hen Wilder turns his back, only Mann is on the porch with Pair, meaning he is the only one who could have thrown Pair down." JA 52, n. 72.

4

**B.    The allegation that Wilder stomped on Pair's hand.**

Pair alleges that Sergeant Wilder, "stepped on . . . and twisted [his hand].
JA 737-38.[1]  As Wilder maintained his position over Pair he motioned for
Lieutenant Burroughs to come handcuff Pair.  JA 1091; JA Vol. III-CD.

**C.    The allegation that Burroughs kneed Pair in the back.**

In the Amended Complaint, Pair asserted "[w]hile Mr. Pair was face down
on the porch, one of the Officers violently drove his knee into his back, causing
immense pain, while still targeting him with the laser sights."  JA 15.  In Pair's
Opposition he maintained he "did not see who drove the knee into his back," but
asserted that the same officer that handcuffed him also kneed him in the back.  JA
55, n. 110.  Because Burroughs handcuffed him, Pair believes Burroughs was
responsible for the knee.  JA 55, n. 110.  Lieutenant Burroughs entered the porch
approximately 27 seconds after Mann and Wilder, after securing Pair's step-son in
one of the police vehicles.  JA Vol. III-CD.  Burroughs did not carry a weapon.  *Id.*

*Pair's alleged injuries.*

Mr. Pair testified he had pain "where they put the knee" and "where they
were stepping on my hand."  JA 737.  He also claims he has dreams where he
wakes up in cold sweats which he attributes to the search.  JA 758.  He has not

---

[1] During his deposition, Pair alternated between testifying Wilder "stepped" on his
hand and "stomped" on his hand.  *See, e.g.*, JA 727, JA 744-45.

received treatment for any alleged emotional injuries.  JA 757-58.  Pair testified

that Wilder injured his left index finger.  JA 737-38.  He asserts he had surgery to

remove a tumor on that finger "due to trauma."  JA 738.  Pair did not seek any

medical treatment on the day of the incident.  JA 738.   Mr. Pair's medical records

indicate Mr. Pair had one surgery eighteen months after the incident—on

September 17, 2015.  JA 44.  The surgery was to remove a cyst in his left index

finger at the "Distal Interphalangeal (DIP) Joint.  JA 44.  The "justification for

procedure" reads as follows: "[Mr. Pair] is a 58-year-old gentleman with a long-

standing history of nodular lesions at the DIP joint of the left index finger.  Patient

presented today for excision."  JA 45.

Mr. Pair has chronic lower-back pain due to a ruptured vertebra.  JA 741-42.

He ruptured the vertebra while performing a parachute jump as part of his military

duties.  JA 742.  The back pain is documented in his medical records as far back as

2004.  JA 43.

*Information known by the Officers prior to executing the search.*

Prior to executing the search warrant the Officers were told Pair had a

ferocious dog, which had previously bit Officer Mayes' car tires and window

during an earlier house call.  JA 669.  They were also informed that Pair had

surveillance cameras inside and outside the house.  JA 865.  Further, the Officers

6

were told Pair had prior experience in the military, worked in corrections, owned

firearms, and had anger issues.  JA 851, 852.  The Officers believed the evidence

they sought could be easily deleted due to its electronic nature.  JA 900.

## SUMMARY OF THE ARGUMENT

Considering Pair's Amended Complaint and deposition testimony, there is

no dispute that Mr. Pair cannot identify Detective Mann or Lieutenant Burroughs

as having used physical force against him during the subject search.  Assuming

*arguendo* that Mann and Burroughs did make physical contact with Pair, their

actions were reasonable in light of the circumstances and lack of injury.  Sergeant

Wilder, bearing in mind the information known to him and the absence of injury

caused by him, acted reasonably when he stepped on Pair's hand.  Even if the

Officers did violate Mr. Pair's Fourth Amendment rights, the rights violated were

not clearly established in light of pre-existing law.

## ARGUMENT

### III.    STANDARD OF REVIEW

This Court reviews an order denying summary judgment on the basis of

qualified immunity *de novo*, "using [its] full knowledge of relevant precedent and

limiting [its] review to the district court's legal conclusions."  *Parrish v.

Cleveland*, 372 F.3d 294, 301 (4th Cir. 2004).  In so doing, this Court must

7

"consider the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in that party's favor." *Mitchell v. Rice*, 954 F.2d 187, 190 (4th Cir. 1992).

## IV. THE DISTRICT COURT ERRED BY DENYING THE OFFICERS QUALIFIED IMMUNITY.

Qualified immunity bars claims against government officials performing discretionary functions whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *S.P. v. City of Takoma Park*, 134 F.3d 260, 265 (4th Cir. 1998) (quoting Harlow *v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Public employees performing discretionary functions are entitled to qualified immunity if their actions are objectively reasonable. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987); *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Sevigny v. Dicksey*, 846 F.2d 953, 956 (4th Cir. 1988). To determine qualified immunity, the Court performs a two-prong inquiry. The Court decides whether the facts, in a light most favorable to the plaintiff, show a constitutional violation. If they do, then the Court determines whether the right was clearly established at the time. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The Court has discretion to determine the second prong without reaching a decision on the first prong. *Id.* at 242.

In this case Pair's evidence does not establish that the Officers violated his constitutional rights. Even assuming, *arguendo*, that the Officers did violate the Constitution, Pair's rights were not "clearly established" in light of pre-existing law.

Proving a constitutional violation under § 1983 requires a plaintiff to "affirmatively sho[w] that the official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (citations omitted). "[§1983] suits against officials in their individual capacities cannot succeed absent proof of some degree of personal involvement in the alleged deprivations of rights." *McDonald v. Dunning*, 760 F. Supp. 1156, 1160 (E.D. Va. 1991) (citing *Vinnedge v. Gibbs*, 550 F.2d 926, 928-29 (4th Cir. 1977); *Bennett v. Gravelle*, 323 F. Supp. 203, 214 (D. Md.), *aff'd* 451 F.2d 1011 (4th Cir. 1971), *cert. denied*, 407 U.S. 917 (1972)).

Pair must show that the Officers personally violated Pair's Fourth Amendment rights by personally using excessive force. "[O]fficers executing a search warrant for contraband have the authority 'to detain occupants of the premises while a proper search is conducted.'" *Muehler v. Mena*, 544 U.S. 93, 98 (2005) (citing *Michigan v. Summers*, 452 U.S. 692, 705 (1981)). Inherent in that authorization "is the authority to use reasonable force to effectuate the detention."

9

*Muehler*, 544 U.S. at 98-99.  Force is deemed reasonable under the Fourth

Amendment when the government's interest in the manner of detention outweighs

the intrusion imposed.  *Graham v. Connor*, 490 U.S. 386, 396-97 (1989).  Whether

force is "reasonable" is not "capable of precise definition or mechanical

application."  *Id.* at 396.  Instead, reasonableness turns on the circumstances of

each individual case and must "embody allowance for the fact that police officers

are often forced to make split-second judgments—in circumstances that are tense,

uncertain, and rapidly evolving—about the amount of force that is necessary in a

particular situation."  *Id.* at 396-97.  Notably, "[t]he 'reasonableness' of a

particular use of force must be judged from the perspective of a reasonable officer

on the scene, rather than with the 20/20 vision of hindsight. . . . Not every push or

shove, even if it may later seem unnecessary . . . violates the Fourth Amendment."

*Id.* at 396 (internal citations omitted).

As to whether a right is clearly established, a law enforcement officer is not

expected to know all of the legal limits of "well-known" constitutional rights; the

officer can claim immunity if a reasonably well-trained officer would not have

known that his conduct violated the plaintiff's constitutional rights.  *Anderson*, 483

U.S. at 638-39.  For a right to be clearly established, it must be "sufficiently clear

that a reasonable official would understand that what he is doing violates that

10

right," and "in the light of pre-existing law the unlawfulness must be apparent." *Id.* at 640 (internal citations omitted).  Thus, if under the circumstances, an officer performing a discretionary function reasonably believes his actions are constitutional, he has not violated a clearly established right.  Indeed, as stated by the United States Supreme Court in *Malley*, if officers of reasonable competence could disagree on whether the action was reasonable, immunity should be granted. *Malley*, 475 U.S. at 341; *Springman v. Williams*, 122 F.3d 211, 214 (4th Cir. 1997). Under this standard, all but the "plainly incompetent or those who knowingly violated the law" are protected.  *Malley*, 475 U.S. at 341.

*Mr. Pair cannot rise above his own testimony regarding Officers Mann and*

*Burroughs.*

A party moving for summary judgment is entitled to judgment as a matter of law when it demonstrates "there is no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c).  Pair testified that he cannot identify Detective Mann or Lieutenant Burroughs as having used physical force against him during the subject incident.  Accordingly, there is no genuine issue regarding their lack of personal involvement.  Thus, the District Court erred by denying Mann and Burroughs summary judgment.

11

### A. Officer Mann

In Pair's Opposition, his counsel argued, for the first time, that Officer Mann threw him to the ground.[2]  As discussed *supra*, proving a constitutional violation under § 1983 requires a plaintiff to prove the defendants' personal involvement. *E.g.*, *Wright*, 766 F.2d at 850.  Pair's own testimony affirmatively shows that *he does not know* whether Officer Mann was the officer who allegedly threw him to the ground.  Mann's  testimony that he went past Pair constitutes a denial that he threw Pair to the ground.  As such, Officer Mann is entitled to qualified immunity.

During Mr. Pair's deposition, the following exchange occurred between Defendants' counsel and Mr. Pair:

> Defendants' Counsel: Who threw you on the ground?
>
> Mr. Pair: One of the officers.
>
> Defendants' Counsel: Do you know which one?
>
> Mr. Pair: I do not.

JA 726.  Such testimony indisputably shows Pair's inability to identify Officer Mann as responsible for allegedly throwing Pair to the ground.  Furthermore, later in the deposition, Pair testified that he believed Sergeant Wilder—not Officer Mann—was responsible for throwing him to the ground:

---

[2] In Pair's Amended Complaint, he alleged only that "the Officers . . . violently grabbed and threw Mr. Pair face down onto the floor of the porch," without identifying which officer threw him.

12

Mr. Pair: I was face -- they threw me down face-forward, put the knee in my back -- lot of pain -- and stepped on my hand at the same time.

Defendants' Counsel: How many different people were involved in doing that?

Mr. Pair: I know of one.

. . .

Plaintiff's Counsel: Now, you described a knee to the back, a hand stomp.  At that point, you were face down, correct?

Mr. Pair: That's correct.

Plaintiff's Counsel: You would agree it was difficult for you to see which officers were taking the exact actions at that point?

Mr. Pair: That's why I said I believe it was Officer Wilder.  I mean, he was the one -- it sounded like his voice.

JA 726-27, JA 760-61.

Nothing in the record even remotely suggests Officer Mann threw Pair to the ground.  While drafting Pair's Opposition, counsel seemingly ignored Mr. Pair's testimony.  But there is no dispute regarding Officer Mann's lack of involvement.

Plaintiff's sole basis for alleging Mann threw him to the ground is stated in a footnote of his Opposition: "[w]hen Wilder turns his back, only Mann is on the porch with Pair, meaning his is the only one who could have thrown Pair down."  JA 52, n. 72.  Plaintiff thus argues that because Mann and Wilder were on the porch alone together, Mann must have thrown Wilder to the ground.  It is well

13

settled by this Court and the United States Supreme Court that this type of naked inference is insufficient to create a genuine dispute of fact capable of surviving a motion for summary judgment. *E.g.*, *M & M Medical Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc.*, 981 F.2d 160, 163 (4th Cir. 1992) ("respondents must show that the inferences they suggest are 'reasonable in light of the competing inferences'") (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986)); *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) ("unsupported speculation is not sufficient to defeat a summary judgment motion"; *Cook v. Howard*, 484 Fed. Appx. 805, 824 (4th Cir. 2012) ("at the summary judgment stage, the Appellants can no longer rest on mere allegations; instead, they must have set forth specific evidence to support their claims"; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("In response to a summary judgment motion . . . the plaintiff can no longer rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken as true"). That Officer Mann was in the same proximity as Mr. Pair when he went to the ground is insufficient to support the allegation that Mann tackled him. Furthermore, when Mann approached Pair his hands were full—with a firearm in one hand and a

14

shield in the other.  JA Vol. III-CD.  Certainly he did not have the ability to also "throw" Mr. Pair.

Officer Mann testified that he did not throw Pair, but rather walked past him on his approach of the house.  JA 117.  Under Federal Rule of Civil Procedure 56, in order to show there is a genuine triable issue regarding whether Officer Mann threw Mr. Pair, Pair "must come forward with specific facts" to dispute Mann's testimony.  *Matsushita*, 475 U.S. at 587 (internal quotations omitted).  Indeed, Mr. Pair has produced no evidence beyond his attorney's  conjecture to dispute Officer Mann's testimony.  JA 896.  Such conjecture cannot create a "justifiable inference" to defeat a motion for summary judgment; there is no *evidence* on which a jury could reasonably find Officer Mann violated Pair's constitutional rights.  *Mitchell*, 954 F.2d at 190.  Without evidence of a constitutional violation, Mann's qualified immunity cannot be abrogated.  Accordingly, the trial court erred in denying Mann qualified immunity.

## B. Lieutenant Burroughs

Pair's Opposition also alleged, for the first time, that Lieutenant Burroughs was the officer who kneed him in the back.[3]  There is no evidence to support that allegation.  In fact, Pair's own testimony directly contradicts it.  As discussed

---

[3] In Pair's Amended Complaint, he alleged only that "one of the Officers violently drove his knee into his back," without identifying a specific officer.  JA 15.

*supra*, Pair testified that he is aware of only one officer involved in throwing him to the ground, stepping on his hand, and kneeing him in his back. JA 726-27. He believes Wilder—not Burroughs—was that officer. JA 760-61. Further, Plaintiff's Opposition alleges that Burroughs kneed Pair in the back *after* he was already on the ground. In contrast, Mr. Pair testified that he was thrown down, kneed in the back, and had his hand stepped on all *at the same time*. JA 726-27. The video evidence also undermines Pair's allegation regarding Burroughs. In his Amended Complaint, Pair asserted "one of the Officers violently drove his knee into his back, causing immense pain, *while still targeting him with the laser sights*." JA 15 (emphasis added). But the video clearly shows that Burroughs did not carry a weapon. JA Vol. III-CD. At the summary judgment stage, the unsupported allegation that Burroughs kneed Pair in the back—which is at odds with Plaintiffs' own record testimony and the video evidence—is insufficient to create a genuine dispute as to whether Burroughs violated Pair's constitutional rights. *See, e.g.*, *Anderson*, 477 U.S. at 252; *M & M*, 981 F.2d at 163. No evidence exists to substantiate a claim that Burroughs used excessive force. Accordingly, the trial court erred in denying Lieutenant Burroughs qualified immunity.

16

*Even if this Court accepts Plaintiff's unsupported allegations of Mann's and Burroughs' use of force, the actions of Mann and Burroughs were reasonable.*

Assuming *arguendo* that Mann physically took down Mr. Pair and Burroughs kneed Pair in the back, such actions were reasonable given the nature of the evidence sought, the potential for Pair to be armed and dangerous, and the lack of resulting injury. In general, "allegations of an officer's use of a de minimus amount of force, without any resulting injury, are insufficient to support a finding of a constitutional violation." *Cook v. City of Bella Villa*, 582 F.3d 840, 853 (8th Cir. 2009). There is no evidence that Pair sustained injuries resulting from Mann's or Burroughs' conduct. Pair did not seek any medical treatment on the day of the incident. JA 738. And Pair's alleged back pain, the only scintilla of evidence that might add weight to these claims, is due to a chronic condition documented as far back as 2004. JA 43; *See* JA 741 (Pair has continuous back pain as a "result of military service" prior to the subject incident). Additionally, similar cases support that officers act reasonably when they use minimal force to detain individuals during searches.

In *Yanez-Marquez v. Lynch*, 789 F.3d 434, 439 (4th Cir. 2015), Immigration and Customs Enforcement (ICE) agents executed a search warrant at a residence suspected of housing illegal aliens. Upon entering the house, ICE agents broke

17

down the door to Yanez's bedroom, where Yanez and her partner, Umana, were sleeping. *Id.* at 440. The door hit Umana's hand as it fell. *Id.* The agents "burst" into the room screaming "police." *Id.* One agent grabbed Umana's neck and threw him to the ground while another held a gun to Yanez's head and yelled "don't move!" *Id.* Yanez, wearing only a "'nightshirt,' cried and pleaded for permission to cover herself 'with more clothes.'" *Id.* Again, the agent "screamed 'don't move' and pointed his gun at her head." *Id.* Yanez was five months pregnant at the time. *Id.* at 439. Yanez sued the Government for excessive force. The Court held the force used by the agents "unquestionably was measured and by no means excessive." *Id.* at 472. In reaching its conclusion, the Court noted that "*Summers* stresses that the risk of harm to officers and occupants is minimized if the officers routinely exercise 'unquestioned command of the situation.'" *Id.* at 471-72 (citing *Summers*, 452 U.S. at 703). Notably, there is no indication that Yanez experienced lasting injuries resulting from the incident. *See generally*, *id.*

        In the instant case the Officers' actions were necessary to retain "unquestioned command of the situation" in a scenario seemingly more dangerous than that of *Yanez. Id.* Upon arrival the Officers immediately saw Pair on his porch, which "compromised" any element of surprise. JA 888. At that point, Mr. Pair was a possible threat. JA 889. After all, the Officers had information

18

suggesting Pair owned firearms, had military training, correctional facility experience, a violent dog, and a temper. JA 849-850, 865. In *Yanez*, with no mention of whether the suspects posed a violent threat, the Court deemed the officers' actions reasonable in kicking down a locked door (which subsequently hit Umana's hand) and holding a surprised, pregnant woman at gunpoint. 789 F.3d at 472. Certainly here—with a potentially armed and dangerous suspect who sees the police coming and has easily-erasable evidence—the alleged actions of Mann and Burroughs were reasonable.

*Sergeant Wilder did not violate Pair's Fourth Amendment rights.*

Mr. Pair testified that Sergeant Wilder "stepped on [] and twisted [Pair's hand]." JA 737-38. No reasonable juror could find that Wilder's actions violated Pair's constitutional rights.

In *Mensh v. Dyer*, a team of officers assembled outside the plaintiffs' home pursuant to an arrest warrant for James Mensh related to drug trafficking crimes. 956 F.2d 36, 37-38 (4th Cir. 1991). The officers hammered on the front door with a metal door knocker. *Id.* at 38. James went downstairs to investigate and saw through a window the silhouette of a man holding a shotgun. *Id.* He then rushed back upstairs to his bedroom intending to call the local police. *Id.* After hearing the sound of running feet inside and calling out "Police! We have a warrant!" the

19

officers broke down the door and entered the Mensh's house. *Id.* The arrest team positioned with guns aimed upstairs at the bedroom door while yelling, swearing, and ordering James to come downstairs with his hands up. *Id.* Eventually James opened the door and started down the steps but ignored an officer's repeated commands to raise his hands, doing so only upon reaching the bottom of the stairs. *Id.* At that point the officers grabbed James, pushed him against the wall, and handcuffed him. *Id.* Soon after, the officers learned they had arrested the wrong person—the man they sought was James' son, James Mensh, Jr. *Id.* The Mensh's brought several claims against the officers, including an excessive force claim. *Id.*

This Court held that "considering the totality of the circumstances it appears that the use of force was not objectively unreasonable and was therefore not constitutionally excessive." *Id.* at 40. In making its determination, the Court considered the following circumstances that fell in the officers' favor: the officers acted on behalf of a valid warrant, the officers had been trained that violence often accompanies drug arrests, James failed to immediately comply with police commands, the officers physically restrained James only until he was patted-down and handcuffed, and James suffered no physical injury as a result of the officers' actions. *Id.*

The circumstances of *Mensh* parallel this case. The officers had a valid warrant to search Pair's home. At the time Wilder stepped on Pair's hand, Pair had not been patted down. JA 1082. Wilder knew Pair had surveillance cameras outside his house and thus might have known of and prepared for the Officers' arrival. JA 1070-71. The Officers believed Pair owned weapons, had military training, had a history of anger, and worked at a corrections facility. JA 849-851. Pair failed to immediately comply with officer commands to get on the ground. JA 1084; *See* JA 747. Wilder ensured the safety of those involved by stepping on Pair's hand "for a matter of seconds," only until Burroughs placed Pair in handcuffs. JA 1097. Finally, there is no evidence of injury resulting from Wilder's actions. While Pair asserts he had surgery to remove a tumor on his finger "due to trauma," JA 738, Pair's medical records clearly state otherwise. The only surgery Pair had after the incident was to remove a lesion in his left index finger at the "Distal Interphalangeal (DIP) Joint." JA 44. Pair's doctor attributes the surgery only to "a long-standing history of nodular lesions at the DIP joint of the left index finger." JA 45. The Records make no mention of any "trauma" that might have caused the lesion. Furthermore, the surgery occurred on September 17, 2015, one year and six months after the search. Pair's history of lesions on that specific finger, coupled with the long delay between the alleged incident and the

21

surgery, precludes a reasonable juror from finding the surgery resulted from Sergeant Wilder's conduct. Under the totality of the circumstances, Sergeant Wilder did not act with objective unreasonableness and his conduct was therefore not constitutionally excessive. As such, the trial court erred in failing to dismiss him from this action.

*The cases relied on in the District Court's Opinion are distinguishable from this case.*

The District Court held that "[d]epending on the evidence at trial, a jury could find these officers, or some of them, liable." JA 100. The Court compared this case to *Smith v. Ray*, 781 F.3d 95 (4th Cir. 2015). The plaintiff in that case was a compliant woman suspected of a nonviolent misdemeanor. *Id.* at 98-99. The defendant, a male officer, threw the plaintiff to the ground, slammed his full weight on her back, and painfully twisted her arm behind her back. *Id.* at 98. At that point the officer ordered the plaintiff to show her arms; but the officer already had her right arm and the plaintiff used her left arm to relieve pressure on her chest so that she could breathe. *Id.* at 98-99. The officer punched the plaintiff three times in her side to gain her compliance. *Id.* at 99. He then successfully handcuffed her. *Id.* Once handcuffed, the officer grabbed the plaintiff's ponytail and "yanked her to her feet by her hair, ripping chunks of hair from her scalp." *Id.*

As a result of the officer's force, the plaintiff suffered a broken rib, visible bruising, continuing shoulder pain, and limited range of motion due to the arm twisting. *Id.* The Court affirmed the trial court's denial of qualified immunity to the officer on a motion for summary judgment. *Id.* at 106. It noted that the officer "denies many of the facts on which [the plaintiff's] claim is based. . . . However, as the district court recognized, it is the jury's role, not ours, to decide whose version of the facts is correct." *Id.*

*Smith* is distinguishable from the instant case for three critical reasons. First, in *Smith*, there is no dispute that the defendant officer was the individual responsible for the use of force against the plaintiff. *See generally, id.* Here, Mr. Pair's own testimony affirmatively establishes his inability to identify Mann and Burroughs as the individuals who allegedly threw him down and kneed him in the back, respectively. Second, the plaintiff in *Smith* suffered cognizable lasting injuries resulting from the defendant's force. *Id.* at 99. Pair fails to set forth any evidence of injury resulting from the Officers' actions. Third, the *Smith* Court noted "every indication was that there was no justification for a resort to force." *Id.* at 104. Up to the point when the officer grabbed the plaintiff, the plaintiff had answered his questions "clearly and cogently." *Id.* at 102. And the officer "did not have any reason to believe that [the plaintiff] was armed. *Id.* Here, Mr. Pair did

23

not immediately comply with the Officers' commands, and the Officers had reasons to believe Pair was armed, dangerous, and possessed easily-destroyable evidence. *Smith* is inapposite to this case. Accordingly, the District Court improperly relied on it when it denied the Officers qualified immunity.[4]

### *The Officers did not violate Pair's clearly established rights.*

Even if the Officers violated Pair's Fourth Amendment rights, such rights were not so clearly established to jeopardize their qualified immunity. The Officers acted reasonably in light of ample pre-existing law. As reasonable officers, they knew the United States Supreme Court and Fourth Circuit Court of Appeals authorize using force to detain civilians present during the execution of search warrants. *See, e.g.*, *Muehler v. Mena*, 544 U.S. 93, 98-99 (2005) (citing *Michigan v. Summers*, 452 U.S. 692, 705 (1981)) ("[O]fficers executing a search warrant for contraband have the authority 'to detain occupants of the premises while a proper search is conducted.'" Inherent in that authorization "is the authority to use reasonable force to effectuate the detention."). Furthermore, in general, "allegations of an officer's use of a de minimus amount of force, without any resulting injury, are insufficient to support a finding of a constitutional violation." *Cook v. City of Bella Villa*, 582 F.3d 840, 853 (8th Cir. 2009). As

---

[4] As the District Court's Opinion points out, the *Smith* Court followed the Court's holding in *Rowland v. Perry*, 41 F.3d 167, 173 (4th Cir. 1994). *Rowland* is distinct from this case for the same reasons *Smith* is distinct.

discussed *supra*, there is no evidence to support Mr. Pair's naked allegation that he was injured. He has not received treatment for physical or emotional injuries related to the search. And further, in cases like this one, this Court has held the officers' actions to be reasonable. *See, e.g.*, *Mensh*, 956 F.2d at 40; *Yanez*, 789 F.3d at 472. This case does not deviate from those cases such that the Officers would have "know[n]" they were violating the constitution, nor were they "plainly incompetent." *Malley*, 475 U.S. at 341. Relying on such precedent, the Officers reasonably believed they were acting within the confines of the Fourth Amendment, even if, *arguendo*, they did make physical contact with Pair. Accordingly, the Eastern District erred in stripping the Officers of their qualified immunity.

## <u>CONCLUSION</u>

For the foregoing reasons, Appellants Mann, Burroughs, and Wilder respectfully request that this Court reverse the judgment of the district court and grant summary judgment in their favor.

25

PAUL BURROUGHS, NICK WILDER,
JAMES TIMOTHY MANN


By: /s / Jim H. Guynn, Jr.
        Counsel

Jim H. Guynn, Jr. (VSB #22299)
Counsel for Appellants
Guynn & Waddell, P.C.
415 S. College Avenue
Salem, VA 24153
Telephone: (540) 387-2320
Facsimile: (540) 389-2350
jimg@guynnwaddell.com

26

## REQUEST FOR ORAL ARGUMENT

Counsel for Appellants asserts that the issues raised in this brief may be more fully developed through oral argument, and respectfully requests the same.

## CERTIFICATE OF COMPLIANCE

1.      This brief of the appellants has been prepared using Microsoft Word

software, Times New Roman font, 14 point proportional type size.

2.      EXCLUSIVE of the corporate disclosure statement; table of contents;

table of authorities; statement with respect to oral argument; any

addendum containing statutes, rules, or regulations, and the certificate of

service, this brief contains 5,605 words.

Date:  March 9, 2017

By: /s/ Jim H. Guynn, Jr.
                    Of Counsel

## CERTIFICATE OF SERVICE

I certify that on March 9, 2017, I electronically filed the foregoing document

with the Clerk of Court using the CM/ECF System, which will send notice of such

filing to the following registered CM/ECF users:

Bradley P. Marrs, Esq.
Marrs & Henry
7202 Glen Forest Drive, Suite 307
Richmond, VA 23226
Phone: 804-662-5715
Fax:    804-662-5712
bmarrs@marrs-henry.com
*Counsel for Appellee Larry Pair*

                                        By: /s/ Jim H. Guynn, Jr.
                                              Of Counsel

29